SOUTHERN COUNTY MUTUAL
INSURANCE COMPANY et al.,
Petitioners,

v.

FIRST BANK AND TRUST OF
GROVES, Texas, Respondent.

No. C–6628.

Supreme Court of Texas.

May 11, 1988.

Rehearing Denied June 15, 1988.

Daniel D. Clayton, Howard Close, Orgain, Bell and Tucker, Gordon R. Pate and Joe Michael Dodson, Pate & Dodson, Beaumont, for petitioners.

Frank Lamson, Provost, Umphrey, Swearingen & Eddins, Port Arthur, for respondent.

ROBERTSON, Justice.

This is a suit to recover on a temporary insurance policy, commonly known as a binder of insurance. First Bank and Trust of Groves, Texas, as a loss payee on an insurance binder, sued Southern County Mutual Insurance Company, R.O. Williams, Jr., R.O. Williams, Jr., d/b/a Colonial Surplus Underwriters Agency, R.O. Williams Co., Inc., Norman Edwards, Norman Edwards d/b/a Colonial Surplus Underwriters Agency, and Colonial Surplus Underwriters Agency. The Bank sued on alternate theories: (1) that Southern County Mutual was liable pursuant to an insurance binder in effect on the date of loss, or, if Southern County Mutual was not liable, (2) that R.O. Williams and the other five defendants were strictly liable for violations of the Texas Insurance Code. Trial was to the jury which answered all issues against the Bank. The court of appeals reversed and rendered against all of the defendants. 732 S.W.2d 69. We affirm in part and reverse in part.

In 1980, Melvin Kraehnke purchased a new White Auto Car tractor for use as a dump truck. Kraehnke had the tractor insured with State Farm Insurance. The Bank, which financed the purchase, obtained a security interest in any insurance proceeds issued under Kraehnke's tractor coverage. In May of 1982, Kraehnke converted his tractor into an 18–wheeler. State Farm informed Kraehnke that it would not insure a "single-shot" 18–wheeler.

On May 27, 1982, Kraehnke telephoned Charles Tuttle, an agent with the uncontested authority to issue binding insurance, who worked for R.O. Williams Company, regarding the possibility of procuring insurance on his 18–wheeler. Tuttle then checked with the underwriters at R.O. Williams Company to see if an admitted insurance company in Texas would insure a single unit 18–wheeler. Tuttle learned that no Texas companies would write such coverage.

Tuttle then contacted Norman Edwards at Colonial Surplus Underwriters Agency, a surplus lines agency which places coverage with insurance companies not licensed in Texas, to see if there was any surplus insurance available for Kraehnke's tractor. Edwards quoted a rate for the coverage and told Tuttle that the surplus lines carrier would be Southern County Mutual.

Tuttle called Kraehnke and told him the coverage price. Kraehnke agreed to the quoted price, inasmuch as his primary concern was the cost of the coverage as opposed to which company would provide the coverage. That same day, Kraehnke went to Tuttle's office to secure coverage with Southern County Mutual. Tuttle gave Kraehnke a typed binder which provided coverage on the 18–wheeler from May 27, 1982, to June 27, 1982. The binder reflected (1) Kraehnke as the insured, (2) Southern County Mutual as the insurer, (3) Colonial as the insurance agency, and (4) the Bank as loss payee. In exchange for the binder, Kraehnke gave Tuttle approximately $900, which was the quoted first premium.

Some two to three days later, Edwards telephoned Tuttle and told him that he had made a mistake in quoting the price of the policy and that Southern County would not write Kraehnke's coverage for the price Edwards had previously given Tuttle. However, Edwards informed Tuttle that he could secure insurance at the quoted price through Amherst Insurance Company. Tuttle, without notifying Kraehnke, authorized a substitution of insurance companies from Southern County Mutual to Amherst. Tuttle never relayed this information to Kraehnke. In fact, sometime during the week before June 27, 1982, Kraehnke called Tuttle inquiring about receiving his payment book and policy. During this conversation, Tuttle failed to mention the substitution of carriers.

On or about June 29, 1982, R.O. Williams Company executed an extension binder which was in effect from June 27, 1982, until July 27, 1982. Due to a clerical error, the extension binder listed the insurance company as Southern County Mutual instead of Amherst.

On July 2, 1982, Kraehnke's 18–wheeler was totally destroyed in a collision. Four days later, Kraehnke called R.O. Williams Company and provided information for the proof of loss. It was at this time that the personnel at R.O. Williams discovered the clerical error on the extension binder. Thereafter, the proof of loss was sent to Amherst. Kraehnke first learned that Amherst, and not Southern County Mutual, was his insurance company when an Amherst adjuster telephoned him in order to prepare the proof of loss. Amherst approved Kraehnke's claim and authorized payment.

On September 24, 1982, the Insurance Commissioner of Pennsylvania entered a Suspension Order against Amherst which prohibited the payment of any claims by Amherst without prior written consent of the Insurance Commissioner. Thereafter, on November 10, 1982, the Commonwealth Court of Pennsylvania issued an order declaring Amherst Insurance Company insolvent. Amherst's charter was dissolved and

the Insurance Commissioner was appointed as liquidator.

In November of 1984, the Bank filed suit against Southern County Mutual alleging that Southern County Mutual was liable on the extension binder which was in effect on July 2, 1982, when Kraehnke's 18–wheeler was destroyed. In the alternative, if no Southern County Mutual binder was found to be in effect on the date of loss, the Bank alleged that R.O. Williams, Jr. and the five other defendants were strictly liable for violating portions of the Texas Insurance Code pertaining to surplus lines coverage. Southern County Mutual filed a cross-action against R.O. Williams, Jr. and the others seeking "indemnity and contribution" in the event that the jury found Southern County Mutual was liable on the extension binder. The case was submitted to the jury on twenty issues, each of which the jury answered against the Bank. The jury did, however, find that the difference in the tractor's market value before and after the collision was $36,000. The trial judge overruled the Bank's Motion for Judgment Notwithstanding the Verdict, and on March 5, 1986, signed the final judgment ordering that the Bank take nothing in its suit against Southern County Mutual, R.O. Williams, Jr. and the other five defendants.

On appeal, the court of appeals, with one justice dissenting, reversed the judgment of the trial court and rendered judgment against all defendants. 732 S.W.2d at 81. The court found that as a matter of law, the extension binder, listing Southern County Mutual as the insurance company, was "legally in full force and effect" on the date of the loss. Further, the court of appeals found that R.O. Williams, Jr. and the other defendants were strictly liable to the Bank for violating various sections of the Texas Insurance Code. In accordance with its holdings as to liability, the court of appeals held that the Bank was to recover $35,000 (the $36,000 market value of the tractor less the $1,000 deductible in the binder) from Southern County Mutual and $35,000 from R.O. Williams, Jr. and the others. We affirm the court's judgment as to Southern County Mutual but reverse that portion of the judgment imposing lia-

bility against R.O. Williams, Jr. and the five other defendants for violations of the Insurance Code.

When Kraehnke left Tuttle's office on May 27, 1982, he had a valid insurance binder with Southern County Mutual. The only action which remained was for R.O. Williams Company to forward Kraehnke a copy of his insurance policy. Therefore, any subsequent changes in insurance companies would have required approval either by Kraehnke or his authorized agent. As stated earlier, the first time Kraehnke learned that Amherst was his new insurance company was when an Amherst adjuster contacted him concerning his proof of loss. Obviously, Kraehnke never authorized a substitution of insurance companies. Therefore, the question then becomes whether Tuttle, as Kraehnke's agent, had the authority to order Edwards to cancel the binder with Southern County Mutual and obtain coverage with Amherst. Southern County Mutual argues that Tuttle had such authority. We disagree.

The crux of Southern County Mutual's argument is that Tuttle, as Kraehnke's agent, had the authority to substitute insurance companies. Thus, Southern County Mutual had the burden of pleading and proving this agency relationship. *Buchoz v. Klein*, 143 Tex. 284, 286, 184 S.W.2d 271, 271 (1944). The Bank was entitled to fair and adequate notice that Southern County Mutual was going to rely upon an agency theory at trial. *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex.1982); TEX. R.CIV.P. 45.

■ Southern County Mutual failed to plead that Tuttle was acting as an agent for Kraehnke. In fact, Southern County Mutual first suggested that Tuttle was Kraehnke's agent in its Motion for Directed Verdict. Southern County Mutual thus failed to carry its burden on its theory that Tuttle had the authority to substitute insurance companies without first obtaining Kraehnke's authorization to do so.

■ In addition to this procedural misstep, this court's holding in *Shaller v. Commercial Standard Fire Ins. Co.*, 158

Tex. 143, 309 S.W.2d 59 (1958), also leads to the conclusion, on the merits, that Tuttle had not attained the status of Kraehnke's agent with the authority to cancel the binder with Southern County Mutual and bind Kraehnke with Amherst. In *Shaller*, one of the issues presented was whether an insurance recording agent, who was employed solely to procure insurance, could act as the insured's agent for the purpose of accepting cancellation of an insurance policy. In holding that such an agency relationship did not exist, we stated that

> it is settled law that one who authorizes another to procure insurance for him does not thereby constitute such person his agent to receive notice of cancellation or for the purpose of agreeing to a proposed cancellation of the policy.

*Id.* at 150, 309 S.W.2d at 64.

In the case before us, Kraehnke contacted Tuttle for the sole purpose of acquiring insurance on his 18–wheeler. Such a limited solicitation by Kraehnke cannot serve as the basis for establishing a broad agency relationship between Kraehnke and Tuttle. *See Alliance Ins. Co. v. Continental Gin Co.*, 285 S.W. 257, 258 (Tex.Comm'n App. 1926, judgmt adopted) (holding that insurance agent, authorized only to acquire insurance on property, did not have authority, as insured's agent, to accept cancellation of policy and substitution of carriers).

■ We therefore conclude that, as a matter of law, a valid Southern County Mutual Insurance binder was in effect on July 2, 1982. Accordingly, we affirm that portion of the court of appeals judgment that (1) Kraehnke had a valid binder with Southern County Mutual and (2) Southern County Mutual was liable to the Bank, as loss payee on Kraehnke's policy, for $35,-000.

In both its pleadings and court of appeals brief, the Bank sought relief on two alternative theories. First, the Bank claimed that Southern County Mutual was liable because a valid Southern County Mutual binder was in force on the date of the accident. Alternatively, if no binder was in effect, the Bank claimed that R.O. Williams, Jr. and the other defendants were strictly liable because they had violated selected provisions of the Insurance Code. By framing its grounds of recovery in this manner, the Bank was, in effect, stating that the existence of a Southern County Mutual binder precluded any imposition of strict liability under the Insurance Code. For if Southern County Mutual was liable to the Bank, this meant that R.O. Williams, Jr. and the other defendants had satisfied the Insurance Code requirements that govern the placement of surplus line insurance companies in Texas.

The court of appeals, however, did not view the situation in this manner. After establishing Southern County Mutual's liability under its binder with Kraehnke, the court nevertheless immersed itself into a lengthy discussion of how R.O. Williams, Jr. and the others were strictly liable to the Bank for violating certain provisions of the Insurance Code. Not only did this unnecessary finding of strict liability go further than any relief the Bank requested, it also resulted in an erroneous double recovery for the Bank.

In rendering judgment, the court of appeals stated that

> we adjudge and order that the Bank recover, firstly, $35,000. plus interest from date of judgment, from R.O. Williams, Jr., R.O.W., Inc., and Norman Edwards, jointly and severally; secondly, that the Bank recover the same amount from Southern County Mutual Insurance Company; also, jointly and severally against the Appellees.

732 S.W.2d at 81. This language, which exemplifies the entire court of appeals opinion, is ambiguous and reasonably subject to differing interpretations. Indeed, one such interpretation is that the court has authorized the Bank to recover a total of $70,000—$35,000 from Southern County Mutual and $35,000 from the other defendants.

■ The Bank's pleadings set forth alternative grounds of recovery. The court of appeals, however, rendered a judgment based upon *both* grounds of recovery pleaded. Not only does this judgment grant an impermissible double recovery to

the Bank, it fails to conform to the Bank's pleadings. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex.1983); TEX.R.CIV.P. 301. We therefore reverse that portion of the court of appeals judgment which finds the other defendants strictly liable and grants the Bank recovery against these individuals. The resulting judgment will correctly reflect Southern County Mutual's liability to the Bank.

Finally, Southern County Mutual alleges that the court of appeals erred in rendering judgment against all defendants because such a judgment foreclosed its cross-action for contribution and indemnity against R.O. Williams, Jr. and the others. We disagree.

Southern County Mutual's cross-action is in the nature of an independent ground of recovery. Therefore, by failing to submit any issues on its cross-action, Southern County Mutual has waived this ground of recovery. TEX.R.CIV.P. 279.

In conclusion, we affirm that portion of the court of appeals judgment stating that a valid Southern County Mutual binder was in effect at the time of Kraehnke's loss. Further, we reverse that portion of the court of appeals judgment which granted the Bank an erroneous double recovery against these individuals.