Gary STUM and Cynthia
Stum, Appellants,

v.

Hayden Eugene STUM, Appellee.

No. 2–92–159–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 23, 1992.

Mansfield & Barton, Bruce L. Mansfield, Hurst, for appellants.

Lane–Ray–Getchell–Wilson, A. Bruce Wilson, Fort Worth, for appellee.

Before WEAVER, C.J., and FARRIS and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellants, Gary and Cynthia Stum, were sued by appellee, Hayden Eugene Stum, for breach of fiduciary duty. The trial court entered a postanswer default judgment against appellants and struck their counterclaim. They now appeal.

We affirm.

## I. FACTS

On April 27, 1991, appellee executed a durable power of attorney in his son's name, appellant Gary Stum. The power given to appellant Gary Stum thoroughly enabled him to conduct appellee's businesses as well as manage all of appellee's day-to-day affairs. This included access to appellee's real and personal property. The document also enabled appellant Gary Stum to appoint a substitute attorney. Appellee revoked the power of attorney on September 6, 1991.

Appellee sued appellants for breach of fiduciary duty pursuant to the power of attorney on September 13, 1991. Appellee included appellant Cynthia Stum in the suit on the basis that appellant Gary Stum had appointed her to act under the power of attorney. He alleged that appellants acted in violation of the power of attorney and had converted property to their name. Appellee asked for an order restraining appellants from communicating with him and from any type of interference with his property and businesses. Appellee also requested a temporary and permanent injunction as to these matters. Appellee sought to have certain conveyances voided, monetary damages for actual damage to certain property, exemplary damages, and attorney's fees.

Appellants answered with a general denial and a counterclaim. They requested a temporary and permanent injunction. They alleged irreparable harm if: 1) they were not allowed to continue operating the businesses; 2) appellee took control of the businesses; or 3) appellee was allowed to abuse and threaten them.

The temporary restraining order was granted in appellee's favor on September 13, 1991. It restricted appellants from communicating with appellee and interfering with his businesses and property. A hearing on whether the temporary restrain-

ing order should be made a temporary injunction, pending final hearing of the case, was held on September 19, 1991. The temporary injunction was granted on October 15, 1991. Among other things, this temporary injunction detailed actions for appellants to take that would enable appellee to maintain the vitality of his businesses during the pendency of the case. Appellants were also ordered to return certain property to appellee. The temporary injunction set the case for trial for the week of March 2, 1992.

Over a month after the temporary injunction was granted, appellants became pro se litigants. Pursuant to a court order, appellants' attorney withdrew from representing them on November 21, 1991. The court ordered all further communication directed to appellants.

Less than a month before trial, appellants and appellee began discovery disputes. On February 13, 1992, the court had a hearing on appellee's motion for sanctions, motion to compel discovery, and motion to turn over property. Appellants were present at this hearing.[1] The court ordered appellants to deliver appellee's attorney $5,839.00 on or before 5:00 p.m. on February 18, 1992. The court also ordered appellants to deliver to appellee's attorney on or before 5:00 p.m. on February 24, 1992: bank statements; canceled checks; check registers; checkbooks with the checks; and deposit records for accounts maintained by appellants in the name of Accurate Air Control. Appellants failed to respond to either order.

On February 27, 1992, the court set a hearing on appellee's motion for sanctions for 9:00 a.m. on March 2, 1992. This order was sent by certified mail to appellants on the same day and was received by appellants. Appellants failed to appear on March 2, 1992. Thus, the hearing on the motion for sanctions and the trial on the merits were conducted without appellants' participation.

After appellee introduced evidence, the court struck appellants' counterclaims as a sanction for their failure to produce the bank documents relating to Accurate Air Control. Appellee then proceeded to introduce evidence on the merits of his claim and the court entered judgment granting the relief he requested.

The judgment awarded appellee $65,-784.47 in actual damages caused by appellants' breach of their fiduciary duty. The court voided two deeds which conveyed appellee's property to appellants, and ordered that appellants deliver to appellee the title to a 1984 Cadillac. The court ordered appellants to pay appellee any rental income from certain property which they received for the month of March 1992 and any subsequent months. The court awarded $35,-000.00 in punitive damages and $20,560.50 in attorney's fees.

Appellee mailed appellants a notice that a postjudgment deposition was scheduled for May 8, 1992. Instead of appearing for the deposition, appellants filed a motion for a protective order.

On May 15, 1992, the court heard appellants' motion for rehearing on the sanctions and motion for new trial. Other motions set for hearing were a motion for contempt, a motion to quash, and a motion for protective order. Instead of hearing those motions, the court reset them, pending his orders on the motion for rehearing and motion for new trial. On June 4, 1992, the court overruled both of those motions. There were no findings of fact or conclusions of law requested or filed. In a trial to the court where no findings of fact or conclusions of law are filed, the judgment of the trial court implies all necessary findings of fact in support thereof. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984) (per curiam); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980) (per curiam).

---

1. The statement of facts from the March 2nd hearing is not properly before this court in this appeal. We use it only to develop these background facts. It is not used in any way in our analysis and has no bearing on our judgment.

## II. POINTS OF ERROR

Appellants bring ten points of error. Their first point of error is that appellee's petition was insufficient as a matter of law and failed to state a cause of action. In their second point, they argue that the trial court erred because the judgment failed to conform to appellee's pleadings. Appellants' third, fourth, sixth, and seventh points of error argue that the judgment was against the great weight and preponderance of the evidence and there was insufficient evidence supporting the judgment. In their eighth point of error, they claim that the trial court erred in striking their counterclaim. They argue in points of error five, nine, and ten that the trial court erred and abused its discretion by failing to grant their motion for new trial and in failing to set aside and vacate its judgment.

## III. HOLDING

Appellants' first and second points of error are overruled because appellee's pleadings put appellants on fair notice of the basis of his complaints and the judgment conformed to these pleadings. We overrule appellants' third, fourth, sixth, and seventh points of error because we cannot determine the legal or factual sufficiency of the evidence supporting the trial court's judgment without the record from that hearing properly before us. We overrule their eighth point of error because the trial court's death penalty sanction, striking appellants' counterclaim, was directly related to appellants' offensive conduct and it was not excessive. Finally, appellants' fifth, ninth, and tenth points of error are overruled because appellants had notice of the trial and they intentionally or with conscious indifference, but not due to mistake or accident, failed to appear.

## IV. ANALYSIS

The order in which we consider appellants' points of error is: whether a new trial should have been granted; if not, whether the pleadings were sufficient and the judgment conformed to these pleadings; whether the evidence was sufficient to support the judgment; and whether the trial court erred in striking appellants' counterclaim.

### A. *The Trial Court Did Not Err in Refusing to Grant a New Trial*

In points of error five, nine, and ten, appellants argue that the trial court abused its discretion in failing to grant their motion for new trial. Because this case was decided by a postanswer default judgment, we must determine whether the court abused its discretion in its application of the *Craddock* test to its refusal to grant a new trial. *Grissom v. Watson,* 704 S.W.2d 325, 326 (Tex.1986); *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124 (1939). This test is threefold: 1) the failure of appellants to appear for trial must not have been intentional, or the result of conscious indifference on their part, but due to a mistake or an accident; 2) the motion for new trial sets up a meritorious defense; and 3) the granting thereof will occasion no delay or otherwise work an injury to appellee. *Craddock,* 133 S.W.2d at 126; *Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81, 82–83 (Tex.1992). Appellants assert that the facts of their case meet the *Craddock* requirements.

Appellants give two reasons that their case meets the first *Craddock* requirement that their failure to appear at trial was not intentional or the result of conscious indifference but due to accident or mistake. First, they claim that they did not receive notice of the setting for the trial on the merits. Second, on the date of the trial, appellants' son was in the hospital recovering from heart surgery.

1. Appellants had notice of the trial setting.

We first determine whether appellants were given notice of the date the case was set for trial on the merits. Lack of notice is a deprivation of a litigant's due process rights to have a reasonable opportunity for a hearing on the merits of the case. *Peralta v. Heights Medical Ctr.,* 485 U.S. 80, 86–87, 108 S.Ct. 896, 900, 99 L.Ed.2d 75, 82 (1988); *Armstrong v. Manzo,* 380 U.S. 545,

550–52, 85 S.Ct. 1187, 1190–91, 14 L.Ed.2d 62, 65–66 (1965); *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex.1983); *Sgitcovich v. Sgitcovich*, 150 Tex. 398, 241 S.W.2d 142, 146 (1951), *cert. denied*, 342 U.S. 903, 72 S.Ct. 291, 96 L.Ed. 676 (1952).

■ We begin our analysis by considering the applicable local rules and state rules of procedure as to what constitutes sufficient notice. This case was set for trial in Tarrant County. Tarrant County local rules of practice provide that "[t]he parties will be notified in writing of the date that the case is set for trial." TARRANT CTY.LOC.R. 3.01. They further provide: "Beginning at 2:00 p.m. on the Thursday before the trial date parties will be notified by the Court to report for trial during the trial week and parties need not appear until called." TARRANT CTY.LOC.R. 3.03. Finally, the state rules provide that "reasonable notice of not less than forty-five days" must be given to the parties of the first setting for trial. TEX.R.CIV.P. 245. Considering these rules as a whole, appellants must have received reasonable notice, in writing, forty-five days before trial, and some kind of appearance notification by the court sometime after 2:00 p.m. on the Thursday before trial.

Now we review the facts of the case before us in order to determine whether appellants were given notice in accordance with these rules. A temporary injunction order which also set the case for trial the week of March 2, 1992, was signed and filed on October 15, 1991. A copy of this order, *before it was signed*, was sent by appellee's attorney by telephonic document transfer to appellants' attorney of record on October 3, 1991. On that day, the attorney mailed appellants a copy of this unsigned order. A letter accompanying this order explained that it would be signed and entered by the court unless appellants objected. The attorney testified that appellant Cynthia Stum contacted him after receiving the letter. He claimed that they discussed the order and decided not to pose *any* objections to it. The attorney stated that he did not send appellants a signed order because he never received a signed copy. Nevertheless, he testified that he knew the week that the matter was set for trial and he passed this information on to appellants.

Appellant Cynthia Stum testified that while appellants never received a signed order stating when the trial would be, they received a copy "of something that said that it would be the week of—either the first week of March or the second week of March, I can't recall." She testified that while at the February 13th hearing on the motion to compel discovery, appellee's counsel stated that there would be a trial early March. She stated: *"I remember it distinctly*, that Judge Crowley asked you, and *you said that it was set* for early March."* [Emphasis added.]

Between 8:35 a.m. and 8:50 a.m. on the morning of the hearing on appellee's motion for sanctions and the trial on the merits, appellant Cynthia Stum telephoned the court. The trial court then reminded her that the trial, as well as the hearing, would be held at 9:00 a.m. that day.

Considering these facts, we hold that appellants received sufficient notice of the trial setting under both the local rules and state procedural rules, even though a signed order was never sent to appellants. The first time appellants received notice was when the unsigned order was sent to the appellants' attorney of record by telephonic document transfer, before his withdrawal. A photocopy of this unsigned order, sent by letter to appellants, was in writing and was given more than forty-five days before trial. Thus, this first notice meets the time requirements of rule 245 and the writing requirements of the local rules. This first notice was also properly served on appellants as it was sent to their attorney of record by telephonic document transfer. TEX.R.CIV.P. 21a.

Appellants argue that they believed that this order, because it was unsigned, was a mere proposal. However, the letter accompanying the order informed them that if there were no objections, the order would be entered, and it was entered twelve days later. Further, their attorney positively testified that he passed the information on

to them before he withdrew from representing them.

The Texas Supreme Court has held that a copy of a letter merely requesting a trial setting, sent to a pro se litigant, is sufficient notice of the trial setting. *Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 185 (Tex.1978). This copied request, meeting the county's local rules and the state's procedural rules, put the litigant on notice that "trial may be on that requested date." *Id.* at 184–85. Thus, the court found that the letter was sufficient notice of the trial setting. *Id.* at 185.

In our case, the order setting the case for trial, albeit unsigned, is at least as much notice as a letter of request, especially considering the letter informing appellants that the order would be entered. This and appellee's attorney's confirmation of the setting at the motion to compel hearing should have alleviated any doubt appellants retained as to when they were going to trial. Further, appellants testified that they complied with the substance of the temporary injunction order in which the court set the case for trial. This discredits their assertion that they believed the order was a mere proposal. Finally, appellant Cynthia Stum's telephone conversation with the court before the trial met the local rule's de minimis requirement that appellants be informed that they need to appear for the trial set for that day.

Not only did appellants receive as much notice as the litigants in *Mansfield,* they received notice that met the due process requirements that appellants have notice of the trial setting. Since *Peralta,* the Texas Supreme Court has twice held that when the record establishes that a litigant "had no actual or constructive notice" of a trial setting, a motion for new trial should be granted pursuant to *Peralta. Lopez v. Lopez,* 757 S.W.2d 721, 723 (Tex.1988) (per curiam); *LBL Oil Co. v. International Power Serv.,* 777 S.W.2d 390, 391 (Tex. 1989) (per curiam). The converse of this rule is that when the record establishes that a litigant had actual or constructive notice, *Peralta* does not require the granting of a new trial. In this case, the record reflects that appellants had actual or constructive notice of the trial setting; thus, *Peralta* does not require the granting of a new trial.

■ Finally, we consider whether the fact that appellants believed they would receive further notice of the trial setting is sufficient excuse for their failure to appear. In light of precedent, we hold that such a misunderstanding does not meet the first *Craddock* requirement. *Butler v. Dal Tex Mach. & Tool Co.,* 627 S.W.2d 258, 260 (Tex.App.—Fort Worth 1982, no writ); *Moody,* 830 S.W.2d at 84. The case was properly set for trial and appellants were bound by this setting, even though they were representing themselves. *See Mansfield,* 573 S.W.2d at 185.

2. Appellants' failure to appear was intentional or due to conscious indifference.

■ Now we consider appellants' second reason for their failure to appear. Appellant Cynthia Stum stated in an affidavit that her then seven-year-old son, Dustin Stum, had heart surgery on February 27, 1992. He was not released until March 5, 1992. The hospital bill verifies that Dustin Stum was admitted into the hospital on February 26, 1992, and he was discharged on March 5, 1992. However, the record also reveals that by the 13th of February appellants knew the date on which the surgery was scheduled.

We recognize the seriousness of this surgery and are sympathetic to appellants. Yet, we must also recognize that appellants had two weeks worth of time to accommodate the court by moving for a continuance based on their son's surgery. They did not. Instead, they consciously chose not to come to court. For this reason, we find that they fail to meet the first prong of *Craddock,* because their failure to appear was intentional or due to conscious disregard and not due to accident or mistake.

■ In this holding, we do not imply that a sudden life-threatening event, such as an accident or illness, would not be an excuse for a party's failure to appear. *See Walk-*

*er v. Harris*, 227 S.W. 360, 361 (Tex.Civ. App.—Texarkana 1921, no writ) (attorney's wife was seriously injured in a car wreck on the day of the trial); *Howard v. Emerson*, 59 S.W. 49, 50 (Tex.Civ.App.1900, no writ). Instead, the facts of our case do not pose a *sudden* life-threatening event or illness. When a defendant or attorney is absent because of illness, the defendant is usually required to demonstrate that he exercised due diligence in either employing another attorney or that he had insufficient time to take the necessary steps. *See Heath v. Fraley*, 50 Tex. 209, 211 (1878); *see also* Michael Pohl & David Hittner, *Judgments by Default in Texas*, 37 Sw. L.J. 421, 444–46 (1983) (for a comprehensive review of excuse under the first *Craddock* prong).

In our case, appellants had the time but failed to act. Appellants, as pro se litigants, had procedural avenues that they could have utilized in their situation. "Litigants who represent themselves must comply with the applicable procedural rules." *Mansfield*, 573 S.W.2d at 185. We can treat them no differently than other parties who failed to answer or appear at trial. Because appellants had notice and failed to appear without a sufficient excuse, we overrule their fifth, ninth, and tenth points of error.

B. *Sufficient Pleadings and Conforming Judgment*

██ Now we review appellants' first point of error. They claim that appellee's pleadings are insufficient to state a cause of action. Because this was a postanswer default judgment, appellants did not waive this argument by not entering a special exception to the petition before the judgment was signed. *Stoner v. Thompson*, 578 S.W.2d 679, 684 (Tex.1979); Tex. R.Civ.P. 90.

██ A plaintiff is not entitled to obtain relief on a cause of action which he failed to sufficiently plead. *Mullen v. Roberts*, 423 S.W.2d 576, 579 (Tex.1968). The petition must give fair notice of the basis of the complaint. *Stoner*, 578 S.W.2d at 683. However, the fact that a plaintiff stated

elements in the form of legal conclusions does not mean that a default judgment will be set aside. *See id.* "Mere formalities, minor defects and technical insufficiencies will not invalidate a default judgment where the petition states a cause of action and gives 'fair notice' to the opposing party of the relief sought." *Id.*

1. Appellee gave fair notice of the basis of his complaint and the relief sought.

██ After reviewing appellee's pleadings, we determine that he pleaded the existence of a fiduciary duty between himself and appellants. He pleaded that this fiduciary duty arose through a power of attorney he executed for the purpose of permitting appellants to manage and control his assets for his benefit. Then, he pleaded that appellants breached their duty. He claimed that appellants: 1) managed the business solely for their own benefit; 2) expended sums and disposed of assets not for business purposes; 3) converted assets; and 4) failed to account for property rentals and business assets. He further claimed that their actions dissipated his businesses' financial bank account and that this threatened to destroy the businesses' economic vitality. He specifically named the assets appellants allegedly converted: two tracts of land, two automobiles, jewelry, firearms, clothing, and furniture.

Appellee then asked for specific damages in the return of the converted property and actual damages to the extent that such property was damaged, destroyed, or lost. He asked for exemplary damages, pleading that appellants' actions were wilful and malicious. Finally, appellee asked for attorney's fees.

We hold that these pleadings were sufficient to give appellants fair notice of the basis of appellee's claims. The pleadings set out the basis for appellee's allegations that appellants breached their fiduciary duty. That is, he alleged that appellants managed the businesses solely for their own benefit, expended sums and disposed of assets not for business purposes, con-

verted specific assets, and failed to account for specific property rentals and specific business assets. Further, appellee was specific as to the damages he sought. This gave appellants fair notice of the relief he sought. Appellants' first point of error is overruled.

2. The judgment conforms to the pleadings.

Appellants' second point of error claims that the trial court's judgment failed to conform to appellee's pleadings and irreconcilably conflicts with the pleadings. A trial court's judgment must conform to the pleadings and the evidence. TEX.R.CIV.P. 301; *Cunningham,* 660 S.W.2d at 812. If the judgment is not supported by the pleadings, it must be reversed. *Oil Field Haulers Ass'n v. Railroad Comm'n,* 381 S.W.2d 183, 191 (Tex. 1964).

In this case, the trial court found that appellants violated their fiduciary duty with intent to defraud by committing acts of fraud, defalcation, embezzlement, and larceny. The court found that appellants willfully and maliciously injured appellee's property. Based on these findings, the court awarded appellee $65,784.47 in actual damages, $35,000.00 in punitive damages, and $20,560.50 in attorney's fees.

First, we consider whether appellee sufficiently pleaded fraud. Appellee pleaded breach of fiduciary duty. When an agent breaches his fiduciary duty, this act amounts to a fraud upon the principal. *Russell v. Truitt,* 554 S.W.2d 948, 951 (Tex. Civ.App.—Fort Worth 1977, writ ref'd n.r.e.) (citing *Moore v. Kelley,* 162 S.W. 1034, 1037 (Tex.Civ.App.—Amarillo 1914, writ ref'd)); *see Douglas v. Aztec Pet. Corp.,* 695 S.W.2d 312, 318 (Tex.App.—Tyler 1985, no writ) (opinion on reh'g) (one who owes a fiduciary duty is an agent). Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. *Bado Equip. v. Bethlehem Steel,* 814 S.W.2d 464, 475 (Tex.App.—Houston [14th Dist.] 1991, no writ). The law further declares the breach of a legal

or equitable duty fraudulent because of its tendency to deceive others and violate their confidence. *Greater S.W. Off. Park v. Commerce Bank,* 786 S.W.2d 386, 391 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

The acts complained of by appellee in his pleadings concern appellants' failure to fulfill their agreement to operate appellee's businesses for appellee's benefit. These facts amount to constructive fraud. While appellee did not specifically plead the elements of fraud, his pleadings were sufficient to infer the elements. *See Ferguson v. DRG/Colony North Ltd.,* 764 S.W.2d 874, 883–84 (Tex.App.—Austin 1989, writ denied) (acts alleged inferred claim of fraud). Thus, we hold that the pleadings were sufficient to support a judgment award based on fraud.

Now we consider whether appellee pleaded defalcation, embezzlement, and larceny. He alleged that appellants failed to properly account for funds they held in a fiduciary capacity; this is defalcation. BLACK'S LAW DICTIONARY 417 (6th ed. 1990). Defalcation is also defined as the act of embezzling. *Id.* Appellee pleaded that appellants misapplied fiduciary property contrary to their agreement in a manner which threatened to destroy the businesses; this is embezzlement. *See Smith v. State,* 752 S.W.2d 121, 124 (Tex.App.—Tyler 1986, pet. ref'd).

Appellee specifically pleaded that appellants conveyed land to themselves, depriving appellee of title to that land. He alleged that in spite of demands made upon appellants, they refused to deliver the property to him. This is larceny. *See Mattiza v. State,* 801 S.W.2d 195, 197 (Tex.App—Houston [14th Dist.] 1990, pet. ref'd). These pleadings were sufficient to support the judgment award based on defalcation, embezzlement, and larceny.

Appellants also allege that the judgment is erroneous because it is in irreconcilable conflict with the pleadings, citing *Southern Cty. Mut. v. First Bank & Trust,* 750 S.W.2d 170 (Tex.1988). In *Southern,* the appellate court rendered

judgment on both of the alternate grounds of recovery pleaded. *Id.* at 173. The Texas Supreme Court held that when pleadings set forth alternative grounds of recovery, a judgment based on both grounds grants an impermissible double recovery and fails to conform to the pleadings. *Id.* at 173–74.

In our case, appellee pleaded for both specific damages in the return of the property and actual damages for the property that could not be recovered. The court awarded both specific and actual damages, but did not grant a double recovery. While two tracts of land and an automobile were ordered returned to appellee by the judgment, other property appellee pleaded converted was not. Such other property was: a 1979 pickup, jewelry, firearms, clothing, and furniture. Unaccounted for rentals and converted sums and assets of the businesses were returned to appellee only through the actual damages award. Thus, *Southern* is not applicable to this case. Because the judgment conforms to the pleadings and does not grant a double recovery, we overrule appellants' second point of error.

### C. *Legal and Factual Sufficiency of the Evidence*

We overrule appellants' third, fourth, sixth, and seventh points of error concerning the legal and factual sufficiency of evidence to support the postanswer default judgment because appellants failed to timely file the statement of facts from the hearing upon which the judgment is based. The burden is on the appellant, the party seeking review, to see that a sufficient record is presented to show error requiring reversal. *See* TEX.R.APP.P. 50(d), 53(k). Therefore, in the absence of a statement of facts, every presumption must be indulged in favor of the trial court's findings and judgment, and where there are no findings and no statement of facts such facts as are necessary to support the judgment must be presumed to have been found. *See Commercial Credit Corp. v. Smith,* 143 Tex. 612, 187 S.W.2d 363, 365 (1945); *Cloer v. Ford & Calhoun GMC Truck Co.,* 553 S.W.2d 183, 185 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.).

### D. *Death Penalty Discovery Sanctions*

Now we consider appellants' eighth point of error. They argue that the trial court erred in striking their counterclaim. This counterclaim requested a temporary injunction, restraining appellee from certain communication with appellants and from interfering in the operation of the businesses in question. They alleged they would suffer irreparable harm if they were deprived of continuing to operate the businesses. They further alleged that they operated the businesses without compensation and that they contributed great sums of their money to the businesses.

According to the judgment, the trial court sanctioned appellants for failing to produce certain bank records for appellee's inspection pursuant to the court's order of February 18, 1992. Because the court found that these records were necessary for appellee to prepare a response to appellants' counterclaim, it struck the counterclaim. This type of discovery sanction is referred to as a "death penalty" sanction. *Welex v. Broom,* 823 S.W.2d 704, 706 (Tex. App.—San Antonio 1992, writ denied).

Appellants claim that the court should have utilized lesser sanctions before striking their counterclaim, relying on *TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913 (Tex.1991, orig. proceeding), for their argument. In *TransAmerican,* the Supreme Court held that courts should measure the justness of sanctions under two standards. First, there must be a direct relationship between the offensive conduct and the sanction imposed. *Id.* at 917. Second, the sanction must not be excessive. *Id.* Under this standard, courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id.; Braden v. Downey,* 811 S.W.2d 922, 929 (Tex.1991, orig. proceeding).

"Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's cal-

lous disregard for the responsibilities of discovery under the rules." *TransAmerican*, 811 S.W.2d at 918. Our role in this review is to determine whether the trial court abused its discretion in ordering the death penalty sanction. *United States Fidelity & Guar. Co. v. Rossa*, 830 S.W.2d 668, 672 (Tex.App.—Waco 1992, writ denied). Factors helpful in this review are: 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the discovery abuse; 3) any history of delay; 4) whether the offending conduct was done in bad faith or with callous disregard for responsibilities under the discovery rules; 5) the effectiveness of alternate sanctions; and 6) the merit of the claim. *Id.; Johnson v. Whitney Sand & Gravel*, 828 S.W.2d 801, 804 (Tex.App.—Waco 1992, no writ).

1. There is a direct relationship between the offensive conduct and the sanction imposed.

First, we consider the fact that appellants, as pro se litigants, were solely responsible for their failure to respond to the discovery order, appear at the hearing, and appear at the trial. There is no issue presented in this case regarding whether fault rests with another party or with an attorney; the fault rests solely with appellants.

Next, we consider the prejudice suffered by appellee. While appellants did not challenge the court's finding that the documents were necessary to appellee's preparation of his defense to appellants' counterclaim, we make an independent inquiry of the entire record to determine the extent of prejudice suffered by appellee because of appellants' failure to produce. *See Rossa*, 830 S.W.2d at 672.

The bank records ordered produced were from a business entered into by appellant Gary Stum around the end of July 1991. The business's name is Accurate Air Control. At the May 15th hearing, appellants claimed that they used approximately $11,000.00 to $20,000.00 of their money from Accurate Air to support appellee's businesses. Appellants claimed that to offset their expenses, they deposited money from appellee's businesses into their Accurate Air Control account.

The court commented that actual evidence showing this offset would reduce any damages awarded to appellee out of his suit. The evidence indicates that appellants also claimed offsets at the February 13th hearing. However, we do not have any way to determine the amount in offsets that appellants presented at that hearing.

From all of this evidence, we can deduce that the bank records are the only avenue through which appellee could determine the accuracy of appellants' claims and prepare a defense to those claims. Thus, the record reveals that production was in fact necessary for appellee to prepare a response to appellants' claims that the money they took out of the businesses was offset by the money they put into the businesses.

Based on these facts alone, we conclude that there is a direct relationship between the offensive conduct and the sanctions imposed. The striking of the counterclaim directly relates to appellants' failure to produce bank records necessary for appellee to prepare his defense to appellants' counterclaim.

2. The sanctions were not excessive.

We continue our perusal of the factors in order to make the more difficult determination of whether the sanction was excessive. Our review of the complete record reveals that appellants' conduct was in bad faith or done with callous disregard for the responsibilities of discovery in that they deliberately disobeyed the discovery order.

While appellants believed they had good reason not to hand over the documents, the trial court disagreed with them and entered an order to that effect. Yet, they did not comply with this order to produce. They did not move for a protective order. They did not move for a continuance. Then, they failed to appear for the hearing on the motion for sanctions and for the trial. We can not hold that these actions by appellants were anything but wilful disregard for the administration of justice and were done in bad faith.

Additionally, our review of the entire record indicates that the documents in question should have been turned over to appellee under the temporary injunction order. This order mandated appellants to turn over all business, financial, and bank records for the operation of the businesses. From the evidence introduced at the hearing on May 15, 1992, the bank accounts from Accurate Air Control were included in the order, as they pertained to appellants' operation of appellee's businesses. Further, appellants did not appear for the post-judgment depositions. These facts also indicate that appellants' conduct was wilful or in bad faith.

Despite this, we must consider if lesser sanctions were available in order to determine if the death penalty sanction was excessive. The trial court did not enter findings as to what lesser sanctions it considered. Thus, we make an independent inquiry of the entire record to determine what lesser sanctions were available to the trial court. *See Rossa*, 830 S.W.2d at 672. What could the court have done on the day of trial when appellants failed to comply with the discovery order?

To answer this question, we consider the fact that legitimate purposes of discovery sanctions are: 1) securing compliance with discovery rules; 2) deterring other litigants from similar misconduct; and 3) punishing violators. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986) (per curiam). With these purposes in mind, we must acknowledge that, in this case, disallowing further discovery or charging expenses for discovery would have had no effect on appellants. This is because the case was at trial and there would be no further discovery on the substance of the claims.

Likewise, an order prohibiting appellants from opposing defenses or from introducing evidence would have had no effect, because appellants were not at trial to oppose or present evidence. An order designating that certain facts be taken as true would have the same effect as striking the counterclaim in this case; thus, we do not consider it a lesser sanction. The same is true of an order holding appellants in contempt of court. This would not have changed the fact that appellants did not appear to present evidence in proof of their counterclaim and that they would not have prevailed on their counterclaim without such proof.

Finally, staying the proceedings until appellants complied with the order to produce, under the facts of this case, would not have secured compliance with the discovery rules, deterred litigants from similar misconduct, or punished appellants. Instead it would have rewarded them for their bad faith by giving them a second chance to comply with the order and appear for the hearing and trial.

We can only determine that the facts of this case justify the trial court's death penalty sanction. For this reason, we hold that the trial court did not abuse its discretion in striking appellants' counterclaim. Appellants' eighth point of error is overruled.

## V. CONCLUSION

Appellants had notice of the trial and with conscious indifference they failed to appear. Appellee's pleadings put appellants on fair notice of the basis of his complaints and the judgment conformed to these pleadings. The trial court's death penalty sanction, striking appellants' counterclaim, was directly related to appellants' offensive conduct and was not excessive. We presume that the court's postanswer default judgment was supported by the evidence because of the lack of the statement of facts from the trial on March 2, 1992. For these reasons, we affirm the trial court's judgment. Costs of appeal are assessed against appellants.