PRODIGY COMMUNICATIONS
CORP., Appellant,

v.

AGRICULTURAL EXCESS & SUR-
PLUS INSURANCE COMPANY n/k/a
Great American E & S Insurance
Company, and Great American Insur-
ance Company, Appellees.

No. 05–05–00442–CV.

Court of Appeals of Texas,
Dallas.

May 30, 2006.

Werner A. Powers, Charles C. Keeble, Jr., Haynes & Boone, L.L.P., Dallas, for Appellant.

Joseph Borders, Walker Wilcox Matousek, Chicago, IL, James Richard Harmon, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for Appellee.

Before Justices WHITTINGTON, WRIGHT, and O'NEILL.

## OPINION

Opinion by Justice WHITTINGTON.

Prodigy Communications Corp. appeals a summary judgment in favor of Agricultural Excess & Surplus Insurance Company n/k/a Great American E & S Insurance Company and Great American Insurance Company. In two issues, Prodigy contends the trial judge erred in granting appellees' summary judgment on the ground that Prodigy failed to give proper notice and that the trial judge erred in limiting Prodigy's ability to take discovery. We affirm the trial court's judgment.

### BACKGROUND

Prodigy is the successor in interest to Flashnet Communications, Inc. Flashnet

purchased a directors' and officers' liability policy from Agricultural Excess & Surplus Insurance Company (AESIC). In November 2001, suit was filed against Flashnet in the United States District Court (Southern District of New York) alleging violations of federal securities laws. Process was served on Flashnet's registered agent on June 20, 2002. Flashnet did not give written notice of the lawsuit to AESIC until June 6, 2003, nearly one year later. AESIC denied the claim because Flashnet did not give timely notice under the policy. Prodigy then brought suit against AESIC in this action. AESIC moved for summary judgment, arguing Flashnet's late notice precluded coverage under the policy. Prodigy filed a cross-motion for summary judgment on its claim for breach of contract. The trial judge denied Prodigy's motion and granted AESIC's motion in part, ruling Prodigy failed to comply with the condition precedent of timely notice under the policy. AESIC then moved for summary judgment on the remaining issue, addressing Prodigy's contention that the policy was sold in violation of Texas law governing surplus lines insurance. The trial judge granted summary judgment for AESIC on this ground and entered a final judgment in favor of appellees. This appeal followed.

### SUMMARY JUDGMENT STANDARD OF REVIEW

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). When the trial judge grants one party's motion for summary judgment and denies the other party's motion, we review both sides' summary judgment evidence, determine all questions presented, and render the judgment the trial judge should have rendered.

*FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

AESIC moved for summary judgment on both traditional and no-evidence grounds. We review a summary judgment de novo to determine whether a party has established its right to summary judgment as a matter of law. *See Dallas Cent. Appraisal Dist. v. Cunningham,* 161 S.W.3d 293, 295 (Tex.App.-Dallas 2005, no pet.). In reviewing a summary judgment, we must examine the entire record in the light most favorable to the nonmovant. *See City of Keller v. Wilson,* 168 S.W.3d 802, 824–25 (Tex.2005).

### NOTICE PROVISION

In its first issue, Prodigy contends the trial judge erred in granting summary judgment on the policy's notice provision. The policy at issue in this case required notice to be given as follows:

> The Directors and Officers shall, as a condition precedent to their rights under this Policy, give the Insurer notice, in writing, as soon as practicable of any Claim first made against the Directors and Officers during the Policy Period, or Discovery Period (if applicable), but in no event later than ninety (90) days after the expiration of the Policy Period or Discovery Period, and shall give the Insurer such information and cooperation as it may reasonably require.

Under this issue, Prodigy raises numerous arguments claiming (i) Prodigy gave timely notice, (ii) even if notice was late, appellees failed to show prejudice, (iii) appellees could not enforce the policy, and (iv) fact issues exist precluding summary judgment. We address these arguments in turn.

First, Prodigy argues it gave timely notice under the policy. Prodigy argues the language "but in no event later

than ninety (90) days after the expiration of the Policy Period or Discovery Period" modifies the "as soon as practicable" language, creating a "safe harbor" by allowing notice of a claim at any time before the end of the ninety-day period, regardless of when the claim was made or when Prodigy received notice of the claim. In response, AESIC argues the policy required written notice to be given "as soon as practicable," and notice more than eleven months after service of the lawsuit was not "as soon as practicable" as a matter of law.

If the language of a policy provision is worded so that it can be given a definite or certain legal meaning, then the provision is not ambiguous, and we construe it as a matter of law. *See PAJ, Inc. v. Hanover Ins. Co.*, 170 S.W.3d 258, 261 (Tex.App.-Dallas 2005, pet. granted) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003)).

The plain language of the provision provides that Prodigy must "give the Insurer notice, in writing, *as soon as practicable* ... but in no event later than ninety (90) days after" the policy period or discovery period ends. (Emphasis ours.) Thus, the policy gives Prodigy ninety additional days to give notice of a claim after the end of the policy period or discovery period if the notice is given "as soon as practicable." Under Prodigy's interpretation of the notice provision, "as soon as practicable" means any time before ninety days after the expiration of the policy period or discovery period. This interpretation is contrary to the plain meaning of the words used in the provision. Also contrary to Prodigy's reading, the provision does not require every claim to be "made and reported" during the policy period or discovery period for coverage to attach. As a matter of law, Prodigy did not give timely written notice as required by the policy. *See, e.g., Nat'l Union Fire Ins. Co. v.*

*Bourn*, 441 S.W.2d 592, 595 (Tex.App.-Fort Worth 1969, writ ref'd n.r.e.) (notice given forty-four days after occurrence giving rise to claim is, as matter of law, failure to give written notice "as soon as practicable").

Prodigy also argues AESIC had actual notice of the lawsuit and that, even assuming notice was not timely, AESIC was not prejudiced by the timing of the notice. Actual notice is not sufficient. *See Sparks v. Aetna Life & Cas. Co.*, 554 S.W.2d 228, 230 (Tex.Civ.App.-Dallas 1977, no writ). In *Sparks*, we held oral notice did not satisfy a contractual provision requiring written notice, even if the oral notice provided the insurer with all the information which would be contained in written notice, and even though the insurer had conducted an investigation of the accident on behalf of another insured. *Sparks*, 554 S.W.2d at 230. Nevertheless, Prodigy cites *Liberty Mutual Insurance Company v. Cruz*, 883 S.W.2d 164 (Tex. 1993), and *Struna v. Concord Insurance Services, Inc.*, 11 S.W.3d 355 (Tex.App.-Houston [1st Dist.] 2000, no pet.), for the proposition that written notice is not necessary when the insurer has actual notice of the claim. These cases, however, turn on whether the insurer was prejudiced by the late notice, an issue not present here, as we discuss below. *See Liberty Mut. Ins. Co.*, 883 S.W.2d at 165–66; *Struna*, 11 S.W.3d at 359–60.

This Court has recently held that an insurance company was not required to show it had been prejudiced by the insured's untimely notice of a copyright infringement claim. *PAJ, Inc.*, 170 S.W.3d at 261. In that case, the parties stipulated PAJ received notice of the suit on December 8, 1998, but did not notify the carrier until some time between April and June, 1999. *PAJ, Inc.*, 170 S.W.3d at 260. The policy at issue in that case also required

notice "as soon as practicable." *PAJ, Inc.*, 170 S.W.3d at 261. Hanover moved for summary judgment on the ground that PAJ's violation of the notice provision was sufficient on its own to bar its claim under the policy. In response, PAJ filed a cross-motion for summary judgment on the ground that untimely notice could only bar a claim if the delay caused prejudice to the insurer. *PAJ, Inc.*, 170 S.W.3d at 260. The trial judge granted Hanover's motion for summary judgment and denied PAJ's motion. *PAJ, Inc.*, 170 S.W.3d at 260. On appeal, PAJ argued the notice provision was a covenant, not a condition precedent to coverage, and claimed that only a material breach by PAJ would excuse Hanover's performance. PAJ also argued Hanover was required to show prejudice from the late notice. *PAJ, Inc.*, 170 S.W.3d at 260. We concluded the policy's notice provision was a condition precedent, not a covenant. *PAJ, Inc.*, 170 S.W.3d at 260–61. In reaching that conclusion, we declined to follow federal district court opinions creating the extra-contractual obligation of an insurer to show prejudice following the insured's failure to perform a condition. *PAJ, Inc.*, 170 S.W.3d at 263. Applying our holding in *PAJ, Inc.* to this case, we conclude AESIC was not required to prove it was prejudiced by Prodigy's delay.

■ Prodigy also contends AESIC cannot enforce the notice provision because the policy was sold in violation of the surplus lines statute. In the trial court, Prodigy bore the burden of raising a fact issue on whether the policy was sold in violation of statute. *See Deer Creek Ltd. v. N. Am. Mortgage Co.*, 792 S.W.2d 198, 200–01 (Tex.App.-Dallas 1990, no writ) (when defendant moves for summary judgment on affirmative defense, and establishes affirmative defense as matter of law, plaintiff/nonmovant must raise fact issue on matter injected by plaintiff in confession and avoidance of affirmative defense). In support of its argument, Prodigy relies on former article 1.14–1, section 8 of the Texas insurance code that an insurance contract entered into by an unauthorized insurer is unenforceable by the insurer.[1] Prodigy argues AESIC became "unauthorized" when it failed to attempt to place the policy with a licensed carrier before resorting to surplus lines coverage. Section 8, however, also included an exception "for insurance procured by a licensed surplus lines agent from an eligible surplus lines insurer." Prodigy does not argue the insurance was not procured by a licensed surplus lines agent or that AESIC did not meet the statutory requirements for eligibility. In both cases relied on by Prodigy, the statutory exception did not apply. *See Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776, 784–85 and n. 10 (Tex.App.-Texarkana 1994, no writ) (insurance company not authorized to do business in Texas could not enforce policy, but court noted article 1.14–1, section 8 does not apply to insurance procured by licensed surplus lines agent from eligible surplus lines insurer); *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 784–86 and n. 16 (Tex.App.-Austin 2004, pet. granted) (insurer unauthorized and therefore liable for premium taxes because insurer could not establish all policies at issue placed through licensed Texas surplus lines agent). Although not licensed in Texas, AESIC could, under the statutory exception, enforce a policy "pro-

---

1. Act of April 27, 1967, 60th Leg., ch. 185 § 1, 1967 Tex. Gen. Laws 401, *amended by* Act of May 27, 1993, 73rd Leg., ch. 999 § 3, 1993 Tex. Gen. Laws 4374, *repealed by* Act of April 30, 1999, 76th Leg., ch. 101, § 5, 1999 Tex. Gen. Laws 538. The current version may be found at section 101.201 of the Texas Insurance Code. TEX. INS.CODE ANN. art. 101.201 (Vernon 2005).

cured by a licensed surplus lines agent from an eligible surplus lines insurer." *See Mid–American Indem. Ins. Co. v. King,* 22 S.W.3d 321, 326 (Tex.1995) (insurer may be both "eligible" and "unauthorized;" term "unauthorized" refers to insurers who are unlicensed, not to those who are ineligible). Prodigy did not offer summary judgment evidence that the statutory exception did not apply in this case. Therefore, the trial judge correctly granted AESIC's motion for summary judgment on this issue.

Prodigy contends in the alternative the notice provision of the policy was unenforceable because the failure to market the policy to admitted carriers was a "material and intentional" violation of surplus lines law under article 1.14–2, section 9 of the former insurance code.[2] Former section 9 provided insurance contracts procured from an eligible surplus lines insurer were valid "unless there was a material and intentional violation of this Article." In making this argument, Prodigy relies on the Beaumont court of appeals' opinion in *First Bank & Trust of Groves v. Kraehnke,* 732 S.W.2d 69, 75–76 (Tex.App.- Beaumont 1987), *aff'd in part, rev'd in part by Southern County Mutual Insurance Company v. First Bank and Trust of Groves,* 750 S.W.2d 170 (Tex.1988). The supreme court affirmed the portion of the court of appeals' judgment that a valid insurance binder was in effect at the time of the loss, on which the carrier was liable. *S. County Mut. Ins. Co.,* 750 S.W.2d at 174. The supreme court reversed the portion of the judgment against the agents, however, noting the court of appeals "immersed itself into a lengthy discussion of how [the agents] ... were strictly liable to the Bank for violating certain provisions of the Insurance Code. Not only did this unnecessary finding of strict liability go further than any relief the Bank requested, it also resulted in an erroneous double recovery for the Bank." *S. County Mut. Ins. Co.,* 750 S.W.2d at 173. The court of appeals' opinion in *Kraehnke* does not impel us to conclude AESIC cannot enforce the notice provision in the policy.

■ Finally, Prodigy also contends fact issues exist that preclude summary judgment in favor of appellees. Under this argument, Prodigy contends there was summary judgment evidence that carriers were writing directors' and officers' insurance at the relevant time and AESIC made no effort to market the policy to these carriers. Prodigy cites testimony from representatives of Swett & Crawford of Texas, Inc., the surplus lines agent placing the policy, that no effort was made to market the policy to admitted carriers. Prodigy also points to a policy written by Great American (an admitted carrier related to AESIC) for a company providing air cargo services. Prodigy argues this was evidence of a "material and intentional" violation of former article 1.14–2, section 5(a),[3] which provided in part, "[n]o insurance coverage shall be eligible for surplus lines unless the full amount of insurance required is not procurable, after a diligent

---

2. Act of April 27, 1967, 60th Leg., ch. 185 § 2, 1967 Tex. Gen. Laws 408, *amended by* Act of May 27, 1993, 73rd Leg. ch. 999 § 16, 1993 Tex. Gen. Laws 4380, *repealed by* Act of May 22, 2003, 78th Leg., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 4138, effective April 1, 2005. The current version of the statute may be found in article 981.005 of the Texas Insurance Code. *See* TEX. INS.CODE ANN. art. 981.005 (Vernon 2005).

3. Act of April 27, 1967, 60th Leg., ch. 185 § 2, 1967 Tex. Gen. Laws 409–10, *repealed by* Act of May 22, 2003, 78th Leg., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 4138, effective April 1, 2005. The current version of the statute may be found in article 981.004 of the Texas Insurance Code. *See* TEX. INS.CODE ANN. art. 981.004 (Vernon 2005).

effort has been made to do so, from among the insurers licensed to transact and actually writing that kind and class of insurance in this state."

Prodigy's evidence does not create a fact issue on whether there was a "material and intentional" violation of surplus lines law. Prodigy relies on testimony from Mike Robison and Simon Bancroft of Swett & Crawford that no effort was made to market the policy, a primary layer of directors' and officers' liability insurance for Flashnet, and that they were aware of the statute's provisions requiring diligent efforts to place the coverage with an admitted carrier. Robison, however, also testified he "had some major issues" with the second layer of the coverage, an excess insurance policy, and "felt ... the premium being charged was excessive." He testified he made an "extensive marketing effort" on the first excess layer; he "called everybody that I could think of and remember" but "every single person that I talked to declined." He explained, "per the words of the underwriters, this account was in such bad shape at the time, nobody felt that this would be a good write for them and they all declined admitted and nonadmitted." Robison testified about the effect of the inability to find excess coverage on the ability to find primary coverage:

> The—if nobody will touch the excess, nobody would write the excess policy; therefore, nobody would write the primary. The excess is much easier to get written than the primary, so the process would have been to talk to carriers about the excess and if they would drop down, and nobody would even get on the excess. I could not replace the excess— I could not even replace the excess carrier; therefore, nobody was going to write the primary.

Prodigy did not offer evidence that a policy was procurable for Flashnet "from among the insurers licensed to transact and actually writing that kind and class of insurance in this state." The only policy offered by Prodigy was written for a different company in a different line of business from Flashnet and contained a provision requiring notice of a claim "as soon as practicable." Viewing all of the evidence in the light most favorable to Prodigy, *see City of Keller*, 168 S.W.3d at 824–25, we conclude Prodigy did not raise a genuine issue of material fact that AESIC committed a "material and intentional" violation of the surplus lines statute.

Prodigy further argues the trial judge erred in granting summary judgment on its extra-contractual claims. Citing no additional authority, Prodigy contends that because AESIC was not entitled to summary judgment on the contract and statutory compliance issues, it was not entitled to summary judgment on the extracontractual issues. Because we have concluded summary judgment for AESIC was proper, Prodigy's argument necessarily fails. The trial judge did not err in granting summary judgment to AESIC on Prodigy's extracontractual claims. We overrule Prodigy's first issue.

## DISCOVERY

■ In its second issue, Prodigy contends the trial judge erred in limiting Prodigy's ability to take discovery. Under this issue, Prodigy claims it should have been allowed to take further discovery on the actual notice issue and the trial judge erred in refusing to permit Prodigy to depose appellees' expert before ruling on the motions for summary judgment.

■ We review the trial judge's discovery rulings under an abuse of discretion standard. *Avary v. Bank of America, N.A.*, 72 S.W.3d 779, 787 (Tex.App.-Dallas

2002, pet. denied). The admissibility of evidence and the scope of discovery largely rests within the discretion of the trial judge. *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 108 (Tex.1985); *see Helfand v. Coane,* 12 S.W.3d 152, 155 (Tex. App.-Houston [1st Dist.] 2000, pet. denied) (orders prohibiting discovery are reviewed under abuse of discretion standard). The trial judge is allowed "great latitude" in her discovery orders. *Martinez v. Rutledge,* 592 S.W.2d 398, 399 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). Unless there is a clear abuse of discretion, the trial judge's ruling should not be disturbed on appeal. *Avary,* 72 S.W.3d at 787.

In this case, the summary judgment evidence established Prodigy received notice of the lawsuit at the very latest in July of 2002, and did not give notice under the policy until June 2003. These are the dates relevant to the summary judgment motions. Prodigy does not contend additional discovery would establish a different, later date for its receipt of notice of the lawsuit, or a different, earlier date on which it gave written notice under the policy to AESIC. Therefore, additional discovery was not needed before the trial judge ruled on appellees' motion for summary judgment on the notice issue. As noted previously, whether or not various departments within AESIC or outside counsel were aware of the lawsuit through other means on other dates is not probative on the issue whether Prodigy gave timely written notice to AESIC under the policy because actual notice that a lawsuit exists does not constitute written notice under the insurance policy. *See Sparks,* 554 S.W.2d at 230.

We note that the trial judge did permit Prodigy to take a deposition of AESIC's outside counsel on written questions, without prejudice to requiring an oral deposition thereafter. Nevertheless, Prodigy argued there was no way to conduct an effective deposition of this witness on written questions and chose not to avail itself of this opportunity. In light of the record before us, we cannot conclude the trial judge abused her discretion in limiting discovery on actual notice. *See Avary,* 72 S.W.3d at 787.

 Under this issue, Prodigy also complains it should have been permitted to take a second deposition of Robison because AESIC designated Robison as an expert after Prodigy deposed him as a fact witness. Prodigy complains AESIC in its summary judgment motion was permitted to rely "on the self-serving expert opinion of Mike Robison ... to the effect that the violations of the surplus lines laws were not material." We reject Prodigy's complaints.

The trial judge did not require an expert opinion regarding whether the facts surrounding the marketing of the policy as testified to by Robison constituted a material violation of a statute. The trial judge could apply the law to the facts to decide the summary judgment motion without relying on expert opinion. The trial judge is allowed "great latitude" in discovery orders and could have decided no further discovery from Robison was necessary because his "expert" opinions would not be at issue in the summary judgment proceedings. *See Martinez,* 592 S.W.2d at 399. We conclude the trial judge did not err in denying Prodigy the opportunity to depose Robison a second time. We overrule Prodigy's second issue.

We affirm the trial court's judgment.