ACCEPTED
01-15-00352-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/28/2015 5:33:36 PM
CHRISTOPHER PRINE
CLERK

**CAUSE NO. 01-15-00352-CV**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

9/28/2015 5:33:36 PM

CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

## HOUSTON, TEXAS

**PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU,**
*Defendants - Appellants*
v.
**MANH HOANG and DUNG LE,**
*Plaintiffs - Appellees*

**On Appeal from the 55th Judicial District Court Harris County
Cause No. 2011-72719**

_____

**APPELLEES' BRIEF**

BUI & NHAN, P.L.L.C.
Scott K. Bui
State Bar No.00789185
Email: sbui@buinhanlaw.com
Charlie T. Nhan
State Bar No. 24025561
Email: cnhan@buinhanlaw.com
3921 Ocee
Houston, Texas 77063
Tel: 713-783-2466
Fax: 713-783-0787

ATTORNEYS FOR
APPELLEES

# TABLE OF CONTENT

I.     STATEMENT OF THE CASE...................................................................................1

II.    STATEMENT REGARDING ORAL ARGUMENT .......................................1

III.   ISSUES PRESENTED.......................................................................................2

IV.    STATEMENT OF FACTS..................................................................................3

V.     SUMMARY OF THE ARGUMENT ...............................................................5

VI.    ARGUMENT......................................................................................................6

VII.   PRAYER............................................................................................................9

ATTORNEYS FOR APPELLEES .............................................................................10

CERTIFICATE OF COMPLIANCE.........................................................................10

CERTIFICATE OF SERVICE....................................................................................10

**TABLE OF AUTHORITIES**

Cases

*Barnett v. Coppell N. Tex. Court, Ltd.*, …………………………………………………. 17
123 S.W.3d 804, 816 (Tex. App. – Dallas 2003, pet. denied)

*Birchfield v. Texarkana Mem'l Hosp.*, …………………………..…………………… 19
747 S.W.2d 361, 367 (Tex.1987)

*Burrow v. Arce*, …………………………………………………………………. 19
997 S.W.2d 229, 237 (Tex.1999)

*City of Keller v. Wilson*, …………………………………………………………8, 18
168 S.W.3d 802, 822 (Tex. 2005)

*Cotten v. Weatherford Bancshares, Inc.*, ……………………………….………… 20
187 S.W.3d 687, 698 (Tex.App.-Fort Worth 2006, pet. denied)

*First State Bank v. Keilman*, …………………………………………………. 8
851 S.W.2d 914, 930 (Tex. App.—Austin 1993, writ denied)

*Glover v. Davis*, …………………………………………………….………… 10
360, S.W.2d 924, 928 (Tex.Civ.App. – Amarillo 1962), *aff'd*, 366 S.W.2d 227 (Tex. 1963)

*Ingram v. Deere*, ………………………………………….…………………. 9
288 S.W.3d. 886 (Tex. 2009)

*King Ranch, Inc. v. Chapman*, …………………………………………………. 8
118 S.W.3d 742, 751 (Tex. 2003)

*Marshall Field Stores, Inc. v. Gardiner,* ………………………………………… 8, 10
859 S.W.2d 391, 400 (Tex. App.— Houston [1st Dist.] 1993, writ dism'd w.o.j.)

*Pool v. Ford Motor Co,* …………………………………….……………………. 8
715 S.W.2d 629, 635 (Tex. 1986)

*Saden v. Smith*, …………………………………………….…..………………. 19
415 S.W.3d 450, 469 (Tex.App.-Houston [1st] Dist.2013, pet. denied)

*Southern County Mutual Insurance Company v. First Bank & Trust*, …………………….. 19
750 S.W.2d 170 (Tex. 1988)

*State v. $11,014.00*, ……………………………………………………...……10
820 S.W.2d 783, 785(Tex. 1991) (per curiam)

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Now come, Appellees, MANH HOANG ("Hoang") and DUNG LE ("Le"), make and file this Brief in reply and response to the Brief filed by PHAP V. NGUYEN ("Nguyen"), ANDY NGO ("Ngo"), and DUNG VU ("Vu"), Appellants, and for such Brief would respectfully show the Court the followings:

## I.     STATEMENT OF THE CASE

Appellees filed suit against Appellants alleging that Appellants had breach a partnership agreement between the family members to own and operate a chicken farm business; in addition to the breach of contract claim, Appellees also made claims for fraud, breach of fiduciary, and sought for accounting of the profit and losses of the business and exemplary damages.

This case involves an agreement between family members to contribute money to own and operate a chicken farm business. Based on the agreement of the family members, it is undisputed and agreed to by all of the members that the ownership interest of the chicken farm business will be directly correlated to the amount of money put forth by each of the family members[1]. The members also agreed to share all profits and losses of the business.[2] Because of the family relations, the lack of formal education, and the inability to comprehend English, it was agreed between Appellees and Appellants that the purchased asset would be titled under Appellants' names.[3] The parties' first chicken farm acquisition was in Georgia, with the initial capital coming from the proportionate

---

[1] R.R. Vol. 2, p. 9.
[2] R.R. Vol.. 2., 64:2-5 and R.R. Vol. 2, 70:18-24
[3] R.R. Vol.. 3., 109:21 – 112:10

**1**

shares of the family members.[4] . The parties then sold the Georgia property and used the proceeds to purchase the first property in Texas in Robertson County.[5] Thereafter, the first Texas property was sold, and the proceeds were used to purchase a second property in Texas.[6] The dispute arose when Appellants unilaterally decided to dissolve the partnership and calculate the distribution based on the sale of the first Texas property, with all deductions for taxes, labor costs, and expenses. [7]

A unanimous jury found that there was a partnership agreement between Appellants and Appellees to own and operate a chicken farm business and that Appellants had breached the partnership agreement and award damages accordingly. Appellants filed other related post-judgment motions, but the motions were denied. This Court has appellate jurisdiction pursuant to Texas Government Code § 22.220.

## II.     STATEMENT REGARDING ORAL ARGUMENT

Oral arguments are not necessary based on the court's records and jury findings. Appellees submit their arguments to this court without requesting an oral argument. Appellees request that notice be given if this court deems that oral argument is necessary.

## III.     ISSUES PRESENTED

Appellees believe the issues should be properly presented as follows:

1.     There is sufficient evidence as a matter of law for the jury to find that Appellants

---

[4] R.R. Vol.. 2, 67:2-4
[5] R.R. Vol.. 3, 16:13-17:2
[6] R.R. Vol.. 2, 76:24 – 78:21
[7] R.R. Vol.. 3, 119:11 – 120:16

and Appellees had agreed share the investment profits and to create a partnership.

2.    There is sufficient evidence to establish that Appellants breached a contract with Appellees.

3.    There is sufficient evidence for the jury to award damages for the breach of duty committed by Appellants.

4.    There is sufficient evidence for the jury to award damages for the breach of the contract by the Appellants.

5.    The trial court correctly awarded damages for both breach of duty and breach of contract by the Appellants.

6.    There is sufficient evidence of the breach of the duty and breach of contract by Appellant Dung T. Vu and that Dung T. Vu is liable to Appellees for such breach.

## IV. STATEMENT OF FACTS

All of the parties in this case are members of Vietnamese refugee families who all migrated to the U.S. at various time after the communist took over Viet Nam in 1975. Appellant Dung Vu ("Vu") is the sister-in-law of Appellee Manh Hoang ("Hoang").[8] Appellant Andy Ngo ("Ngo") is the cousin of Hoang's wife and Appellant Vu[9]. At a family meeting around 2006, Appellant Ngo informed the family members that he has a friend who is willing teach and train him on how to operate a chicken farm by raising chickens for chicken producers.[10] After a visit to a chicken farm belonging to a friend, Appellants and Appellees and other family members met at Ngo's house to discuss their plan to buy a chicken farm and the amount of capital contribution each member would need as a down payment for the purchase of a chicken farm[11]. It was at this family's meeting that the family members, including Appellants and Appellees, agreed to the following cash contribution and the percentage share proportional to the contribution from each member[12] [13]:

| | | |
|---|---|---|
| Appellants Phap Nguyen and Dung Vu | $80,000 | 25% |
| Appellee Manh Hoang and Diem Vu[14] | $80,000 | 25% |
| | $160,000 | |
| Appellee Dung Le and Tuan Ngo[15] | $50,000.00 | 15.5% &15.5% |
| Appellant Andy Ngo | $30,000.00 | 10% |
| Tony Ngo and Trang Le[16] | $50,000.00 | 12.25% & 12.25% |
| Tien Ngo and Dung Dinh[17] | $30,000.00 | 12.25% & 12.25% |

---

[8] R.R. Vol. 3, 108:8-24
[9] R.R. Vol. 3, 108:8-24
[10] R.R. Vol. 3, 68:23-25
[11] R.R. Vol. 3, 112: 14-23; R.R. Vol. 3, 112: 14-23
[12] R.R. Vol. 2, 11 Defendants' Exhibit 1
[13] R.R. Vol. 2, 9 Plaintiff's Exhibit 7
[14] Diem Vu is Appellant Dung Vu's sister R.R. Vol. 3, 109: 8-10
[15] Tuan Ngo is the brother of Appellant Ngo and an ex-boyfriend of Appellee Le  R.R. Vol. 2: 10
[16] These are brothers and sisters of Appellant Ngo and were not parties to the lawsuit. R.R. Vol. 3 111: 2-6

$160,000

The family members purchased the chicken farm in Georgia for $1,490,000 with the cash contribution as down payment[18]. Appellee Hoang testified that because of the family's relationship, the family members decided to put the following names to the title to the Georgia Chicken Farm property: Appellant Andy Ngo (as Ngo will represent the contribution of $160,000 from his side of the family), and Appellants Phap Nguyen and Dung Vu (as Vu is the sister-in-law of Appellee Hoang and the contributors of the remaining $160,000)[19].

Even though Appellant Ngo contributed the least amount of money into the total cash contribution from his side of the family, Appellee Hoang testified that Ngo's name was chosen to be listed on the title to the Georgia property because he speaks English well and others do not[20]. Accordingly, Appellants Phap Nguyen and his wife Dung Vu's names were chosen to be listed to the title to the Georgia property (to represent the other half of the total contribution) because Vu is the sister of Appellee Hoang's wife.[21] Hoang testified that during the family's meeting, Appellants told him that it would be easier to obtain loan from bank when there are fewer names listed on the deed.[22] Hoang was further told that all of the names of the family members would be added to the title once the business is expanded[23]. Moreover, Hoang also explained that because of culture (since Appellant Vu is the oldest sister of his wife, and as a respectful gesture to the oldest sister) and because of Appellants Nguyen and Vu's citizenship status, their names were chosen to represent his side of the family[24]. Hoang testified that Appellant Vu discussed and agreed with him

---

[17] These are brothers and sisters of Appellant Ngo and were not parties to the lawsuit R.R. Vol. 3 111: 2-6
[18] R.R. Vol. 5. Plaintiff's Exhibit 2
[19] R.R. Vol. 3, 110: 1-22; R.R. Vol. 2 9: Plaintiff's Exhibit 7
[20] R.R. Vol. 3, 110: 4-9; 111: 2-7
[21] R.R. Vol. 3,111:13 - 112:10
[22] R.R. Vol. 3 111: 13 - 112:1
[23] R.R. Vol. 3 111: 18-25; 112:1
[24] R.R. Vol. 3 112: 2-10

and his wife that since their contributed funds came from hurricane settlement and stated "This is the money coming from God.[25] So we all decided to use that money to do business… if we are successful, everybody would be better.[26] If we fail, we just like a refugee first coming to the country"[27].

When asked by counsel about the kind of profit sharing agreement the family members had made with respect to the initial contribution, Hoang testified that all of the family members agreed that if the business is successful, then everybody will benefit.[28] Consequently, if the business fails, then everybody fails together.[29] Hoang stated all of the family members agreed that they will all be owners once the business gets bigger[30].

Hoang testified that he briefly worked at the Georgia farm at the initial stage.[31] He did not get pay for the earlier work because he believed he has an ownership interest in the farm[32]; Hoang stated that the members all agreed that whoever stayed and worked at the farm should get pay $2,000 per month.[33] Hoang stated that Appellants Ngo and Nguyen stayed and worked at the Georgia farm and they both received compensation for their work at that time.[34]

The members had many meetings and agreed that since they all are owners they will also share the losses as well as the success of the farm.[35]

The Georgia chicken farm was sold for $2,230,000[36]; the members all agreed to apply the

---

[25] R.R. Vol. 3 112:11 - 113:10
[26] Id
[27] R.R. Vol. 3 113: 1-7
[28] R.R. Vol. 3 112:11 - 113:10
[29] Id and R.R. Vol. 3 114:11 - 115:2
[30] R.R. Vol. 3 114: 1-7; 116: 9-11; 117: 1-8
[31] R.R. Vol. 3 115:3-5
[32] R.R. Vol. 3 115:3-22 and R.R. Vol. 3 116: 6-11
[33] R.R. Vol. 3 115:3-22
[34] R.R. Vol. 3 115: 23-25; 116: 1-5
[35] R.R. Vol. 3 117: 1-21
[36] R.R. Vol. 2 22: 1-8

profit and proceed from this sale to purchase a second chicken farm in Robertson County, Texas (first Texas Property) for $4,900,000[37]. Appellee Le testified that Appellants and Appellees all worked at the farm in Robertson County and they all received monthly salaries for their work[38]. Le received $3,000 per month while Appellants Nguyen and Ngo and Appellee Hoang each received $3,500 per month for their work on the farm[39].

The parties eventually sold the Robertson County chicken farm (the first Texas property) and use the proceeds to buy the second Texas property. [40] Appellees were told by Appellants that the proceeds from the sales of the first Texas property would be used to reinvest into another property at a later time.[41] Appellants are now the owner of the second Texas property worth $6,930,000.[42]

## V. SUMMARY OF THE ARGUMENT

The testimony of the parties and the evidence presented during trial support the jury's findings that Appellees are entitled to their respective interests in the business and Appellants' breach of duty in their dealings and disclosure. The jury's findings were supported by the evidence of the creation of a partnership between parties. Additionally, the evidence supports the jury's findings that Appellees' were deprived of their interests in the chicken farm business when Appellants unilaterally withheld the 20% interests as their labor costs. The evidences of the parties' initial contributions were clear and uncontested. The evidences were also undisputed with respect to the Appellants' wrongful and unilateral withholding of the taxes which were never submitted.

The evidences also support the jury's findings that the damages were for two separate

---

[37] R.R. Vol. 3 16: 13-25; 17:1-2; Vol. 5 Plaintiff's Exhibit 3 & 4; Vol. 2 17: 12-25; 18: 1-6; 25: 15-25
[38] R.R. Vol. 2 19: 4-25
[39] R.R. Vol. 2 20: 5-19
[40] R.R. Vol.. 2, 76:24 – 78:21
[41] R.R. Vol.. 3, 123:19 – 124:1
[42] R.R. Vol. 5, Plaintiffs' Exhibit 1

issues of facts: the withholding of the 20% labor costs and the withholding of taxes for Appellants' own benefits. The amounts awarded by the jury were clearly based on logically conclusion of evidence presented as evidenced the number derived on a mathematical formulation.

## VI. ARGUMENT

### 1.) THERE IS SUFFICIENT EVIDENCE SUPPORTING THE JURY'S FINDING OF A BREACH OF DUTY BETWEEN THE PARTIES

Appellants argue that there is insufficient evidence as a matter of law to establish a partnership between the parties, and as such, there is no liability for breach of a partnership agreement.

In review the sufficiency of the Jury's findings, Appellant must demonstrate that no evidence supports the finding. The "court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it." If the conclusion could be logically drawn by means of logical deduction and proposition from the evidence then the court should support the fact-finder's conclusion. So long as the fact is "a logical consequence from other proven facts," the court must uphold the decision of the fact-finder. *Marshall Field Stores, Inc. v. Gardiner,* 859 S.W.2d 391, 400 (Tex. App.— Houston [1st Dist.] 1993, writ dism'd w.o.j.) and *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Even if there was a disagreement as to the conclusion, the court "cannot substitute its judgment for the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." The evidence would support the jury's findings so long as it enables reasonable and fair-minded people to derive different conclusions. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003); See *Pool v. Ford Motor Co,* 715 S.W.2d 629, 635 (Tex. 1986); and *First State Bank v. Keilman,* 851 S.W.2d 914, 930 (Tex. App.—Austin 1993, writ denied)The evidence must be weak as to shock the conscience fairness and so wrong as to be unjust before the court is allowed to set aside a jury's finding.

The Supreme Court's decision in *Ingram v. Deere*, 288 S.W.3d. 886 (Tex. 2009) set forth the five factors that indicate the creation of a partnership as follows:

(1) receipt or right to receive share of the profit of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) sharing or agreeing to share:
    (A) losses of the business; or (B) liability for claims by third parties against the business; and

(5) contributing or agreeing to contribute money or property to the business.

In this case, the jury's finding in response to Question No. 7 is supported by sufficient evidence that the parties created a partnership. In fact, Question No. 7 clearly tracked the five factors enunciated by the Supreme Court in *Ingram*. Accordingly, the jury found sufficient evidence and answered in the affirmative with respect to the five factors from below:

(1) **receipt or right to receive share of the profit of the business**;

It is undisputed that Appellants and Appellees agreed and received the share of the profits from the chicken farm business.[50]. Further, Appellants also agreed to this fact as indicated to in Appellants' brief.[51]

(2) **expression of an intent to be partners in the business**;

Appellants argue there was no evidence that the parties expressed their intent to be partners to anyone, including lender, contractor, chicken producer, or employee. Appellants cherry picked the testimony by Appellee Hoang and stated the only evidence is where Hoang testified that "we all agreed we are owners."

---

[50] Vol. 5: Plaintiff's Exhibit 1
[51] See Appellants' Brief: p. 6: second paragraph; Vol. 3 24: 1-5

The Texas Supreme Court has ruled that an ultimate fact may be established by circumstantial evidence. *State v. $11,014.00*, 820 S.W.2d 783, 785(Tex. 1991) (per curiam). "Circumstantial evidence is the proof of collateral facts and circumstances from which the mind arrives at the conclusion that the main facts sought to be established in fact existed." *Glover v. Davis*, 360, S.W.2d 924, 928 (Tex.Civ.App. – Amarillo 1962), *aff'd*, 366 S.W.2d 227 (Tex. 1963). An ultimate fact may be established by circumstantial evidence when the circumstances relied on are of such a character as to be reasonably satisfactory and convincing, and are not equally consistent with the nonexistence of the ultimate fact. *See Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 401 (Tex.App. – Houston [1st Dist.] 1993, writ dism'd w.o.j).

There is undisputed evidence that all of the family members, including Appellants and Appellees met and agreed as to the cash contribution and the corresponding percentage of interest each member would share in the total contribution[52]. There was evidence and the logical explanation of how the title to the first property in Georgia was taken[53]. Aside from believing that he is one of the owners, Hoang also stated that he believed Appellant Ngo's sister and brother are owners as well. There is evidence that Hoang worked without compensation and used his own car in the Georgia farm at the initial stage because he believed he is the owner of the farm[54].

On the contrary, Appellant Ngo, who contributed the least amount of money to the total family's contribution[55], never offered any evidence to refute Appellees' claims of ownership interest; never offered any evidence to substantiate their contentions that Appellees were only investors and not partners or owners. For instance, Ngo was asked on direct and offered the following answers:

---

[52] R.R. Vol. 5. Plaintiff's Exhibit 2; R.R. Vol. 3 110: 1-22; R.R. Vol. 2 9: Plaintiff's Exhibit 7
[53] R.R. Vol. 3 111: 18-25; 112: 1; R.R. Vol. 3 112: 2-10
[54] R.R. Vol. 3 115: 5-22; 116: 1-11
[55] R.R. Vol. 2, 11 Defendant's Exhibit 1

Q:      Now, explain to me what kind of arrangement or agreement that you have among family members where someone puts money in, pay a portion of the interest that they have to pay, okay, and you say they are not the owner.  Explain to me what the arrangement is.

A:      This is – this is $400,000.  This is – this is $400,000 borrowed from – Phap borrowed from friend.  There is no – there is no agreement, letter, anything.

R.R. Vol. 3. 24: 6-13.

Ngo was asked again to explain the ownership interest of the Texas property and offered the following:[56]

Q:      -- who -- who are you testifying that are owners of this Texas property, the first Texas property you bought, who were the owners?

A:      We are.

Q:      Who is "we"?

A:      Myself and Phap, and Dung Vu –

Q:      So just the three of you?

A:      Yes, sir.

Q:      Now, explain to me what is the arrangement of the family members, okay, as far as the structure of this property here?

A:      Okay.

Q:      Why should they put their money in, get a share of the profit out, have to pay the part of the interest that they borrowed on? What kind of arrangement are we talking about?

A:      The arrangements --  what I understand the arrangement here that Phap borrowed $400,000 and shared the --  to make money -- to come up another eight house and make the money, share the profit at the end, distribution for them, so we told them that before.  And they satisfied that, so --

(3) **participation or right to participate in control of the business**;

Aside from the undisputed evidence that the parties received the share of the profits from

the business, Appellees did offer ample of evidence of their participation in the chicken farm

---

[56] R.R. Vol. 3. 24: 17-25; 25: 1-13.

- 11 -

business. Hoang testified that all of the family members agreed that if the business is successful, then everybody will benefit. Consequently, if the business fails, then everybody fails together. Hoang stated all of the family members agreed that they will all be owners once the business gets bigger[57].

Hoang testified he worked at the Georgia farm for about two weeks at the initial stage. He did not get pay for the earlier work because he believed he has an ownership interest in the farm[58]. Hoang used his own truck as a piece of equipment to do the clean up at the farm[59].

Hoang stated that the members all agreed that whoever stayed and worked at the farm should get pay $2,000 per month. Hoang testified Appellants Ngo and Nguyen stayed and worked at the Georgia farm and they both received compensation for their work at that time[60].

Appellee Le testified that prior to the purchase of the Georgia farm she had discussed the purchase price of the property and the operation of the property with Appellants Ngo and Nguyen[61]. Le stated she also visited the property with Appellants Ngo, Nguyen and Vu prior to its purchase[62].

Le testified that Hoang, Ngo, and Nguyen all worked at the Georgia farm[63] and all of them received salaries for their work[64]. Le testified there was a meeting to decide the salary of the members who worked at the Georgia farm[65].

After the Georgia farm was sold and received a net amount of $657,512, Le testified it was a family decision to use this money to buy the Texas property[66].

---

[57] R.R. Vol. 3 113: 1-7
[58] R.R. Vol. 3 116: 6-11
[59] R.R. Vol. 3 115: 5-22
[60] R.R. Vol. 3 115: 5-22; 23-25; 116: 1-5
[61] R.R. Vol. 2 8: 10-25; 9: 1-17
[62] R.R. Vol. 2 9: 18-24
[63] R.R. Vol. 2: 5 -10
[64] R.R. Vol. 2 15: 21-25; 16: 1-3
[65] R.R. Vol. 2 16: 4-10
[66] R.R. Vol. 2  25: 15-25

Le testified that after the Georgia farm was sold, all of the family members had a meeting at Appellant Ngo's house and all of the members decided to buy the property in Robertson County, Texas[67]. The members also decided at this meeting the purchase price of the property and the member who will be responsible for the daily operation of this property[68].

Le testified that Appellants Ngo, Nguyen and Vu and Appellees all worked at the farm in Robertson County and they all received monthly salaries for their work[69]. Le received $3,000 per month while Appellants Nguyen and Ngo and Appellee Hoang each received $3,500 per month for their work on the Texas farm[70].

Appellant Ngo testified he did consult with Appellee Hoang prior to the purchase of the property in Texas. He testified he believed Appellee Le was also consulted prior to the purchase of the property in Texas[71]. Prior to the purchase of the Texas property, Ngo testified he consulted and explained to the family members that the total proceed from the sale of the Georgia farm will be used to buy the property in Texas[72].

(4) **sharing or agreeing to share: losses of the business or liability for claims by third parties against the business;**

After the purchase of the Texas property, the parties needed to borrow an additional $400,000.00 to build eight additional chicken houses[73]. Ngo testified the parties had a family meeting and stated that Appellant Nguyen had to borrow a loan of $400,000 from his friend and that Appellees Hoang and Le have to pay their proportional share of the interest on this loan as well[74].

Hoang testified he is obligated to pay back the interest from the $400,000 loan, and in fact,

[67] R.R. Vol. 2 17: 18-25; 18: 1-3
[68] R.R. Vol. 2 18: 7-14
[69] R.R. Vol. 2 19: 4-25
[70] R.R. Vol. 2 20: 5-19
[71] R.R. Vol. 3 20: 1-12
[72] R.R. Vol. 3 20: 13-19
[73] R.R. Vol. 3 21: 6-25
[74] R.R. Vol. 3 21: 20-25; 22: 1-11; 23: 5-16; 24:1-5

he did pay his share of the interest from this loan[75].

Appellee Le testified after the purchase and construction of the Georgia farm, Appellants Nguyen and Vu told her that although Le's name and signature were not on the bank loan document; Le is still responsible for paying back the bank loan[76].

Hoang testified the parties agreed that if the business loses money, he will have to contribute the loss[77]. He stated that all of the family members agreed that each of the members must make contribution to pay back the bank loan[78].

Hoang testified he paid the monthly interest (for his share of the interest charges of $100,000) from the $400,000 loan taken out by Appellant Nguyen to build eight additional chicken houses at the Texas farm[79].

Hoang testified that although the bank loan was under Appellees' names, he stated that all of the members agreed to be responsible for such loan[80].

Appellant Nguyen admitted in his testimony that Appellees Hoang and Le did make interest payments on the $400,000 loan Nguyen had to borrow to construct eight additional chicken houses at the farm in Texas[81].

(5) **contributing or agreeing to contribute money or property to the business**.

It is undisputed that Appellants and Appellees and other family members agreed and

---

[75] R.R. Vol. 3 126: 19-25; 127: 1-7
[76] R.R. Vol. 2 45: 5-25
[77] R.R. Vol. 3 126: 1-6
[78] R.R. Vol. 3 126: 7-10
[79] R.R. Vol. 3 127: 3-7
[80] R.R. Vol. 3 130: 9-13
[81] R.R. Vol. 3 204: 6-20

contributed an amount of $320,000 to the purchase of the chicken farm in Georgia[82].

**Summary of the evidence and the "totality-of-the-circumstances" of the five elements**

Based on the evidence presented herein, Appellees presented sufficient evidence to satisfy the five elements cited from the above to establish the creation of a partnership under current Texas law.

2.) SUFFICIENT EVIDENCE TO ESTABLISH A BREACH OF CONTRACT CLAIM BY APPELLEES

The jury in this case was asked on two separate and distinct set of operative facts. First, the jury was asked whether the parties agreed for Appellees Hoang and Le to have ownership interest in the chicken farm operation (Jury Q. 1 and 4). The jury answered these questions in the affirmative and awarded damages in accordance with the instructions set forth in the jury charge[83].

Second, the jury was asked whether Appellants and Appellees created a partnership (Jury Q. 7 and 13). The jury also answered these questions in the affirmative and awarded damages based on the findings of breach of duty of loyalty, duty of care, duty of utmost good faith, fairness and honesty, and duty to disclose from a partnership interest[84].

Based on the first set of fact described herein, the jury found that Appellants breached this agreement. Accordingly, the jury awarded the damages to Appellees for the breach of this agreement in term of profit generated from the business for which Appellees were deprived of. Appellants admitted in trial that they did not have any written or oral agreement to withhold the

---

[82] R.R. Vol. 5 Defendant's Exhibit 1; Plaintiff's Exhibit 7. Also, see footnotes 4 &5 of Appellees' Brief
[83] C.R. Jury Charge Question No. 1, 4
[84] C.R. Jury Charge Question No. 1, 7

20% for labor cost[85]. The damages awarded by the jury are for the withholding of these unjustified labor costs. Clearly, there was no evidence between the parties that allowed Appellants to withhold the 20% for labor costs. The evidence clearly reflected the 20% of the total labor withheld by Appellants which amounted to $67,302 for the Georgia farm, and $305,137 for the Texas farm[86]. Logically, the jury took the total labor costs and awarded the amount Appellees would have received as profit had Appellant not withheld the 20%. Specifically, Appellee Hoang received a judgment of $93,109.75[87] for the breach of the parties' agreement in sharing the profit. The calculation is based on the total labor costs not authorized or agreed by the parties, namely, $372,439 multiple by the stipulated 25% interest the parties initially agreed to at the inception of their business contribution[88].

With regard to the second set of facts as described herein, the jury found that Appellants owed and breached the duties as particularly set forth in the jury charge and awarded damages based on the amounts withheld by Appellants under the pretext of a tax withholding under section 1031 exchange of the Internal Revenue Service Code. This amount is not profit from the business. This amount was supposed to be used by the business to pay for any applicable capital gains earned by the business.

The evidence clearly showed that Appellants withheld the tax amounts and rolled these amounts over to Appellants' current Texas farm. Appellants' tax expert Michael Halls conceded under cross-examination that the partners to the partnership could potentially liable for the capital gain taxes imputed to the business[89]. Hall also testified that he did not properly reviewed Appellants Ngo and Nguyen's tax return to see if the taxes were properly reported

---

[85] R.R. Vol.. 2, 24:13–16 and R.R. Vol.. 2, 74:19 – 75:5
[86] Vol. 5 Plaintiff's Exhibit 1
[87] C.R. Final judgment awarded
[88] Vol. 5 Plaintiff's Exhibit 7
[89] R..R. Vol. 4 40: 1-25

and paid[90]. Hall testified that he only reviewed the tax figures provided by Appellant Ngo and did not independently verify the figures[91]. Hall further stated that Appellant Ngo's tax figures for a 1031 tax exchange was done incorrectly[92]. Finally, Hall testified that the statute of limitation on the amounts withheld by Appellants has expired[93].

The jury, considered all of the evidence on the tax liability, awarded Appellees damages on the amount illegally withheld by Appellants. The jury also considered the evidence that these tax amounts were rolled over to Appellants' current chicken farm which has a current market value of about $6,930,000.[94]

Appellants also raised, for the first time, the issue of *quantum meruit*. Appellants claimed that Appellants are entitled to claim for *quantum meruit* and that Appellees have a duty to prove at trial that the services claimed was unreasonable.

There is no record from the trial court that the claim for *quantum meruit* was sought by either party to the underlying litigation. There was no findings of fact and conclusion of law with respect to the *quantum meruit* claim, and as such, this Court is prohibited from reviewing claim or dispute of facts that was not properly sought in the trial court stage.

Further, Rule 94 of the Texas Rules of Civil Procedure requires all matters constituting avoidance or affirmative defenses be pleaded to give opposing party notice of defensive issues to be tried; failure to do so results in waiver of affirmative defenses. *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 816 (Tex. App. – Dallas 2003, pet. denied).

3.) SUFFICIENT EVIDENCE TO SHOW DAMAGES FOR BREACH OF FIDUCIARY

---

[90] R.R. Vol. 4 44: 8-10
[91] R.R. Vol. 4 51: 2-20
[92] Vol. 4 72: 5-11
[93] Vol. 4 73: 3-15
[94] Plaintiff's Exhibit 1

Appellees restate the argument in point of error No. 2 and 5, and argue that the damages were just and correct. The amount of damages was calculated separately and distinctly from the damages awarded in the breach of duty of a partnership. These damages are separate and distinct in that the jury calculates the damages based on the duty of the Appellants' failure to divide the profits as agreed and use the tax deferred excuse as a precursor for their own investments. Appellees assert the arguments in point error No. 2 and 5.

When there is more than a scintilla of evidence to support the judgment, the evidence should be considered and inferred in the light most favorable to the verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). The jurors are the sole judges of the credibility of the witnesses and the weight of the evidence. *Id*. at 819. In this case, the jury's finding support the damages for both the breach of agreement and the breach of duty of the partnership agreement, separately and individually. The test is whether fair-minded people would reach the same verdict based on the evidence and testimony presented. *City of Keller*, 168 S.W.3d at 827

4.) SUFFICIENT EVIDENCE TO SHOW DAMAGES FOR BREACH OF CONTRACT

Appellees restate the argument in point of error No. 2, 3 and 5, and argue that the damages were just and correct. The amount of damages was calculated separately and distinctly from the damages awarded in the breach of duty of a partnership. These damages are separate and distinct in that the jury calculates the damages based on the duty of the Appellants' failure to divide the profits as agreed and use the tax deferred excuse as a precursor for their own investments. Appellees assert the arguments in point error No. 2, 3 and 5.

**5.) AWARD OF DAMAGES FOR BREACH OF PARTNERSHIP AGREEMENT AND BREACH OF CONTRACT WAS PROPER**

It is true that the "one recovery rule" is applicable where the facts and the damages are one and the same. *Southern County Mutual Insurance Company v. First Bank & Trust*, 750 S.W.2d 170 (Tex. 1988). The one-satisfaction rule does not preclude the recovery where the breach of fiduciary and breach of contract, as in this case, are recovered from separate and distinct injuries. *Saden v. Smith*, 415 S.W.3d 450, 469 (Tex.App.-Houston [1st] Dist.2013, pet. denied). See *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex.1987). The jury's finding of a breach of duty in this case is not a double recovery if the damages are part of a disgorgement awards. See *Saden*, 415 S.W.3d at 469. Due to the relationship of the parties, the damages awarded are to discourage the Appellants' disloyalty and misconduct in using the withholding of taxes as a precursor to investing in the second Texas property for their self-interests. [95] See *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex.1999).

It is clear from Appellant Andy Ngo's testimony, that the Appellants withhold the 20% as labor costs which were never agreed by any of the family members.[96] The damages of 20% for labor were calculated into the failure of Appellants' failure to comply with the parties' agreement.[97] It is also clear from Appellant Andy Ngo's testimony, that the amount of the tax withholding was used to purchase the second Texas property under Appellants' names for their own benefits without regards to the duty owed to Appellees.[98] The ownership interest in the chicken farm business is clearly distinct and different from the duty to be candor and fair. In this case, the excuse in withholding the taxes to be invested into Appellants' later investment is an unjustified enrichment which Appellant should not be entitled to. Thus, the jury's finding of Appellants' withholding of taxes for their own benefits amount to a violation of trust and honesty. This relationship of trust

---

[95] R.R. Vol.. 2, 76:24 – 78:21
[96] R.R. Vol.. 2, 24:13–16 and R.R. Vol.. 2, 74:19 – 75:5
[97] Charge of the Court, No. 1 -6
[98] R.R. Vol.. 2, 77:8 – 78:12

went beyond the normal partnership, but an informal relationship from a moral, social, domestic, and personal relationship of trust and confidence. *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex.App.-Fort Worth 2006, pet. denied)

**6.) THERE IS SUFFICIENT EVIDENCE TO ESTABLISH APPELLANT DUNG VU'S LIABILITY FOR THE BREACH AND THE DAMAGES AWARDED THEREIN.**

Appellants argue Vu should not be held liable to Appellees because there is no evidence that Vu was involved in the calculations and distributions of the profits and the dispute of the business assets by Appellees.

There is ample evidence that Appellant Vu was involved in the decision making process along with Appellants Ngo and Nguyen.

For instance, Hoang testified that Appellant Vu discussed and agreed with him and his wife that since their contributed funds came from hurricane settlement and stated "This is the money coming from God. So we all decided to use that money to do business… if we are successful, everybody would be better. If we fail, we just like a refugee first coming to the country"[99]. Hoang stated that this is the reason he agreed to let Appellants' names to be listed in the title to the property.

Hoang testified the family members had a meeting prior to the purchase of the Georgia property and stated the following:

Q: My question to you is: Did the family members talk about sharing the profits before you bought the Georgia property?

A: I have already said we had a meeting. If the business is successful, everybody will benefit. If we fail, everybody fails together. We all agree to the initial agreement. That is why we produced our money. Plus the promise was from my wife's sister. When the

---

[99] R.R. Vol. 3 113: 1-7

**20**

business gets bigger, my name will be in the document.[100]

This assertion of the promise by Vu and her involvement was never challenged by Appellants' counsel during trial.

Appellee Le testified after the purchase and construction of the Georgia farm, Appellants Nguyen and Vu told her that although Le's name and signature were not on the bank loan document; Le is still responsible for paying back the bank loan[101].

Le testified that after the Georgia farm was sold, all of the family members had a meeting at Appellant Ngo's house and all of the members decided to buy the property in Robertson County, Texas. The members also decided at this meeting the purchase price of the property and the member who will be responsible for the daily operation of this property[102]. Accordingly, Vu never contested that she was not present at this family meeting.

Respectfully submitted,

**Bui & Nhan, PLLC.**

By: */s/ Scott K. Bui*
Scott Khoa Bui
State Bar No.00789185
By: */s/ Charlie Nhan*
Chalie Nhan
State Bar No.24025561
3921 Ocee Street
Houston, Texas 77063
Tel: 713-783-2466
Fax: 713-783-0787
Email: sbui@buinhanlaw.com
Email: cnhan@buinhanlaw.com
ATTORNEYS FOR APPELLEES

---

[100] R.R. Vol. 3. 114: 11-19.
[101] R.R. Vol. 2 45: 5-25
[102] R.R. Vol. 2 17: 18-25; 18: 1-3; 18: 7-14

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.3, I certify that this Brief has 6,635 words and otherwise complies with Rule 9.4(i). In making this Certification, I have relied on the word-count of Microsoft Word, v. 14.0.7128.5000.

*/s/ Scott K. Bui*
Scott Khoa Bui

## CERTIFICATE OF SERVICE

I hereby certify that, on September 28, 2015, a copy of the foregoing was delivered in a manner prescribed by the Texas Rules of Appellate Procedure to:

***Via Facsimile: (936) 559-0099 and Email: trorie@sbcglobal.net***
Tom Rorie
210 NORTH STREET
NACOGDOCHES, TEXAS 75961

*/s/ Scott K. Bui*
Scott Khoa Bui